SAMUELS and another *v.* LOUISVILLE & N. R. Co.

*(Circuit Court, N. D. Alabama.* April Term, 1887.)

1. RAILROAD COMPANIES—DUTIES AS CARRIERS—FREIGHT—DISCRIMINATION.
   Where there are two rival lines of steam-boats on a river plying between the same points, and carrying freight for hire, both bearing the same relation to a railroad company and both seeking its services to forward their freight to the same points of destination, and the company systematically discriminates against one by charging it 50 cents a hundred more for freight than the other, it is liable in damages at the suit of the line so discriminated against.

2. SAME.
   The fact that the higher rate is not unreasonable does not affect the fact of discrimination.

3. SAME—"PRORATING."
   The relative situations of the two lines with reference to the railroad company, both as to the kind of service sought and as to the conditions under which it is to be performed, being substantially the same, such a suit cannot be regarded as a claim for damages founded upon the refusal of the company to "prorate" with one line, upon through freights, upon the same terms that it does with the other.

At Law. On Demurrer to Complaint.
*L. W. Day*, for plaintiffs.
*R. A. McClellan* and *C. C. Harris*, for defendant.

BRUCE, J. The plaintiffs allege they were engaged as common carriers for hire by means of steam-boats on the Tennessee river, between Decatur and intermediate points, to Bridgeport, in the year 1886; that at the same time, and between the same points on the Tennessee river, the steam-boats Chattanooga and Wilder were also running on the river between the same points, as carriers, in competition with the plaintiffs; that the

defendant, the Louisville & Nashville Railroad Company, a common carrier by rail, operating its roads south from Louisville, Kentucky, to points on the Tennessee river, discriminated against plaintiffs in the matter of freights delivered to them by plaintiffs for transportation to points of destination, and in favor of the steam-boats Chattanooga and Wilder; that the discrimination consisted in this: that, for substantially the same service in the carriage of the same class of freight, under like circumstances and conditions, and to the same points of destination, the defendant railroad company charged and received from plaintiffs 50 cents more per hundred than it charged and received from the steam-boats Chattanooga and Wilder. Plaintiffs say that, by reason of such discrimination and charges for freight against them, they were injured in their business as common carriers on the river, and were put to expense, trouble, and increased risk in carrying their freight long distances on the river, to obtain carriage for it to points of destination, for which alleged injury to them they bring this complaint and suit for damages. The demurrer admits the discrimination in the rates, as stated; and the question at once suggests itself whether a common carrier, under the circumstances stated, has the right to have and maintain two prices, or different prices to different parties, for substantially the same service rendered under like conditions.

The question here is not whether a common carrier must necessarily have one and the same price for all, or whether a discrimination in a single case can be made the ground of an action; but here were two lines of steam-boats on the Tennessee river, plying between the same points, carrying freight for hire, and bearing the same relation to the defendant railroad company, both seeking its service to carry their freight to the same points of destination; and the question is, has the defendant the right to discriminate against one, and in favor of the other, not in a single or isolated case, when different circumstances and conditions might be at once suggested, but systematically, in a course of dealing with the plaintiffs in the transportation of their freight?

The idea that lies at the very base of the law of common carriers is that they are public servants, and serve all alike. The general proposition needs no citation of authority, and, as applied to railroad companies, the doctrine is thus stated by McCRARY, J., in the case of *Southern Exp. Co.* v. *Memphis R. R.*, 13 Cent. Law J. 68, 8 Fed. Rep. 802.

"(1) A railroad company is a *quasi* public corporation, and bound by the law regulating the powers and duties of common carriers of persons and property; (2) it is the duty of such a company, as a public servant, to receive and carry goods for all persons alike, without injurious discrimination as to rates or terms."

Other cases might be cited to the same purport. In *Hays* v. *Pennsylvania Co.*, 12 Fed. Rep. 311, BAXTER, J. says:

"The defendant is a common carrier by rail. Its road, although owned by a corporation, was nevertheless constructed for public uses, and is, in a qualified sense, a public highway. Hence everybody constituting a part of the public, for whose benefit it was authorized, is entitled to an equal and impar-

tial participation in the use of the facilities which it is capable of affording. Its ownership by the corporation is in trust, as well for the public as for the shareholders; but its first and primary obligation is to the public."

In the light of these authorities, where can this defendant railroad company and public servant base its right to make the discrimination claimed by this demurrer? If a discrimination of 50 cents per hundred can be thus made and sustained, under such circumstances, then any discrimination, however great and oppressive, can be made; and practically the defendant can say who may and who may not serve the public, as common carriers on the Tennessee river, one of the great water-ways of commerce in the United States.

It is true there is a line of decisions to the effect that railroad companies may make different rates to different persons; and the cases show upon what grounds discrimination in rates may be and are sustained, and upon what grounds they have been held to be vicious, and are condemned, by the courts. But it is not necessary here to go into any examination of the cases on this line of decision until advised by plea or otherwise upon what ground, and under what circumstances and conditions, the defendant made the discrimination here complained of. He admits the fact of discrimination; and when the service is stated to have been substantially the same, and rendered under substantially the same circumstances and conditions, the burden is on him to justify it.

The demurrer, however, goes to the point that the mere fact that the defendant charged a higher price to the plaintiffs than to the line of rival steam-boats is no ground of complaint, unless it is alleged that the price charged the plaintiffs was unreasonable. In other words, the proposition seems to be that the defendant had the right to make the discrimination up to the point that the charge became unreasonable, and that charging a less price to the rival line of boats is no ground of complaint, unless the larger price is an unreasonable one. It is said that to charge one too little for a service is not to charge another too much for the same service; that the smaller charge does not make the greater charge more than the service is really worth, for that the service may have been worth every penny asked and received for it. Concede that, then it follows that the defendant company was serving the steam-boats Wilder and Chattanooga for a less hire and compensation than the service was really worth; and the practical result to these plaintiffs, as carriers on the river, is the same, whether the defendant charged them 50 cents per hundred too much, or charged their rivals 50 cents per hundred too little. In either case, the defendant railroad company makes the discrimination, and the plaintiffs lose and are deprived by the defendant of their equal right and opportunity for business as common carriers on the river. And the question recurs, what right, or upon what ground, can this public servant, owing an equal duty to the entire public, say to one, "I will serve you for less than I will serve your neighbor?" The proposition insisted upon is that a common carrier is bound to carry for a reasonable remuneration, but is not bound to carry for the same price for all; and the case of *Johnson* v. *Pensacola R. Co.*, 16 Fla. 623, is cited, where the

supreme court of that state say: "The rule is not that all shall be charged equally, but reasonably, because the law is for the reasonable charge, and not the equal charge;" and other authorities are cited on the same line.

It would add nothing to the complaint, in its statement of fact, if the word "unreasonable" had been used. The word "unlawful" is used; but the use of qualifying words such as these is unimportant. The ultimate test of what is a reasonable or unreasonable charge, a lawful or unlawful charge, in a given case, is a mixed question of law and fact, to be reached by the verdict of a jury, under proper instructions by the court, or, perhaps, by the action of what is called sometimes a railroad commission, under statutes, state or national, on that subject.

This is not a case for the recovery of extortionate and unreasonable charges, exacted by the defendant railroad company, where the question as to what is a fair and just charge for a given service might properly arise, and be determined by some accepted rate of charges, or some usage or custom which has acquired the force of law. Nor is it the question as to what is the intrinsic value of the service, in the ascertainment of which there are many elements to be considered, such as the amount of the capital employed, and the difficulty and expense attendant upon the service rendered, including compensation for services of officers having the administrative capacity required for such service. But, so to speak, on this side of that ultimate question is the question of the legal right of the defendant to make the discrimination here complained of.

When it is said that to charge one too little is not to charge another too much for a given service, we are ready to give assent. Because individuals may serve for hire, or may, without compensation, donate their services, it does not follow that common carriers by rail may do the same thing. The company owns the property, and the capital employed in the construction and operation of its road, but it must not be forgotten that in such operation of its railroad it is also in the enjoyment of a public franchise; and in the control of the property it has not the same measure of power that persons have and exercise over property that is affected by no public use, and operated without the exercise of any public franchise. *Munn* v. *Illinois*, 94 U. S. 113.

There may be, and there is, difficulty in the determination, in given cases, of the line of public and private right, as to this species of property, as is illustrated in the enactment and administration of the recent act of congress known as the "Interstate Commerce Law." But the question in this case is to be determined upon the principles of the common law, and in the light of those principles as applied to railroad companies. In a case like the one at bar, can there be a reasonable charge which is not at the same time substantially an equal charge? And is not a charge unreasonable when it is unequal, and in breach of the obligation and duty of the common carrier to the public?

There is a suggestion in the argument that this is a claim for damages founded upon the refusal of the defendant railroad company to prorate with the plaintiffs, upon through freight, upon the same terms that it

did with the rival line of boats; and the case of *Atchison, T. & S. F. R. Co.* v. *Denver R. R.*, 110 U. S. 667, 4 Sup. Ct. Rep. 185, is cited upon this point, and in support of the general proposition insisted upon by the defendant in his demurrer to this complaint. That is not the case made by the complaint, and the supreme court of the United States, in the opinion in that case, in so far as it touches the issues involved in this case, is against the views of the demurrant, as is seen from page 684 of the opinion, where the court say:

"The bill does not seek to reduce the local rates, but only to get this company put into the same position as the Denver & Rio Grande, on a division of through rates. This cannot be done until it is shown that the relative situations of the two companies with the Atchison, Topeka & Santa Fe, both as to the kind of service and as to the conditions under which it is to be performed, are substantially the same, so that what is reasonable for one must be reasonable for the other."

Applying this to the case at bar, the implication is certainly very strong that the relative situation of the two rival lines of boats on the river being the same as to the defendant company, both as to the kind of service and the conditions under which it is to be performed, no charge is reasonable for one party that is not also reasonable for the other; and the idea of different prices to different parties, for substantially the same service, performed under like conditions, finds no favor in the authority cited.

Another proposition of the defendant is that there is a charter provision, to the benefit of which the defendant is entitled, by which the legislature granted the power to take "tolls from all persons, property, merchandise, and other commodities, transported on their road, provided only the net profits of the road shall never exceed twenty-five per cent. per annum." And within this limitation, which it is said has never been passed, the company was vested with absolute discretion, bounded only by the common law, over the rates of compensation it should have for services rendered. This proposition answers itself, because it admits the bound and limit of the common law; and we have shown that the *gravamen* of this action is in the alleged violation by this defendant of the obligation and duty under the common law, as applied to common carriers by rail.

The suggestion of a charter right which gives the defendant an option to discriminate at will, provided only the net profits of the road do not exceed a certain limit, scarcely merits serious consideration.

Upon the question of the remote, indefinite, and speculative character of the damages claimed, the complaint is within the rule on that subject. As to the loss of business, it may be that the proof may show that it is incapable of measure by a pecuniary standard; but the reading of the complaint shows that an objection to the whole complaint, on the ground stated, ought not to be maintained.

The result of these views is that the demurrer is overruled.